Filed 7/15/22 P. v. Reyes CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C092515 |
| v. | (Super. Ct. No. CRF191808) |
| JESUS REYES, | |
| Defendant and Appellant. | |

Defendant Jesus Reyes beat and falsely imprisoned his girlfriend and told two witnesses not to report it. Convicted of domestic violence, false imprisonment, and witness dissuasion, and sentenced to an aggregate term of 18 years four months, defendant appeals.

1

Defendant now contends (1) the evidence was insufficient to sustain the convictions for witness dissuasion (Pen. Code, § 136.1, subd. (b)(1))[1], (2) the trial court should have stayed the sentence for false imprisonment under section 654, (3) the trial court erred by not staying one of the sentences for witness dissuasion under section 654, (4) it was error for the trial court to impose full midterm sentences for the two counts of dissuading a witness, (5) the sentence did not comply with newly amended section 1170, subdivision (b) (Senate Bill No. 567 (2021-2022 Reg. Sess.)), and (6) the abstract of judgment must be corrected to accurately reflect the convictions.

We conclude (1) the evidence was sufficient to sustain the convictions for witness dissuasion, (2) it was proper for the trial court not to stay the sentence for false imprisonment, (3) the trial court should have stayed the sentence for one of the witness dissuasion counts, (4) the trial court did not err by imposing full midterm sentences for witness dissuasion, (5) we will vacate the sentence and remand for resentencing under newly amended section 1170, subdivision (b), and (5) the abstract of judgment must reflect, among other things, that defendant was convicted on two counts of violating section 136.1, subdivision (b)(1).

We will vacate the sentence and remand for resentencing. In all other respects we will affirm the judgment.

BACKGROUND

Defendant was in a dating relationship with A.M. With A.M. as a passenger, defendant drove into the parking lot of an apartment complex in Davis. Seventeen-year-old R.S. and his mother L.D. were in the parking lot and saw defendant and A.M. in the car. Defendant was punching and hitting A.M., mainly on her head, as he screamed and yelled at her. Defendant also head-butted A.M. and pulled her by the hair. A.M. was

---

[1] Undesignated statutory citations are to the Penal Code.

awake but seemed tired and unresponsive. She opened the passenger door and put her foot out, getting her foot stuck in the door when defendant tried to pull her in.

R.S. and L.D. yelled at defendant to let A.M. out of the car. Defendant pointed his finger at R.S. and L.D. through the open passenger window and told them to "mind your own business," "shut up about this," and "don't tell anyone." Defendant also used some racist language against L.D., who was wearing a head scarf. Defendant's conduct scared R.S. and L.D.

Defendant pulled A.M. into the car and took off, even though A.M.'s foot was partially out of the door. R.S. obtained the license plate number.

A jury convicted defendant of domestic violence (§ 273.5, subd. (a) - count one) and false imprisonment with force (§§ 236, 237 - count two). The jury also convicted defendant of two counts of witness dissuasion (§ 136.1, subd. (b)(1) - counts three and four), having acquitted defendant of the greater crime of witness dissuasion by threat (§ 136.1, subd. (c)(1)). The trial court found true an allegation that defendant had a prior serious felony and strike conviction.

The trial court sentenced defendant to the upper term of four years for domestic violence, with a consecutive term of eight months (one-third the middle term) for false imprisonment. The trial court also sentenced defendant to a consecutive full middle term of two years for count three, witness dissuasion, with a concurrent full middle term of two years for count four, witness dissuasion. The trial court doubled the terms based on defendant's prior strike. In addition, the trial court added a consecutive five years for the prior serious felony conviction. The aggregate sentence imposed was 18 years four months.

DISCUSSION

I

3

Defendant contends the evidence was insufficient to sustain the convictions for witness dissuasion (§ 136.1, subd. (b)(1)). Section 136.1, subdivision (b)(1) prohibits attempting to dissuade a witness from making a report of victimization to authorities.

When a defendant challenges the sufficiency of the "evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

In making his argument, defendant recites the prosecution's theory of guilt, quoting the prosecutor's closing argument. However, we do not review the prosecution's theory or argument. Instead, we review the sufficiency of the evidence to support the conviction under the criminal statute. (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.) "Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it." (*People v. Rehmeyer* (1993) 19 Cal.App.4th 1758.)

L.D. heard defendant say "mind your own business" to her, but she did not remember what else he said. R.S., on the other hand, remembered the gist of what else defendant said. R.S. testified: "I don't remember exactly what he said, but at the end I do remember he said one thing [as he drove away], you shut up about this or something like that, don't tell anyone something like that . . . ."

Defendant claims: "The problem with this evidentiary record is that [R.S.] was never able to say what words [defendant] said to him that were intended to prevent or discourage him from reporting victimization to authorities." This argument is unpersuasive. The gist of what defendant said to L.D. and R.S. was to not report his attack on A.M. Taken together with the violence of the situation and defendant's

4

pointing at and addressing L.D. and R.S. who were demanding that defendant let A.M. go, the evidence was sufficient defendant was attempting to dissuade L.D. and R.S. from reporting his attack to authorities. Defendant presents no authority for the proposition that we must know exactly what defendant said to L.D. and R.S. to uphold his convictions for witness dissuasion. And we know of none.

The evidence of witness dissuasion was sufficient.

## II

Defendant next contends the trial court should have stayed the term for false imprisonment under section 654. Although we will vacate the sentence and remand for resentencing on other grounds, we nevertheless discuss this and other sentencing contentions to provide guidance to the trial court and parties on remand.

In relevant part, section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under either of such provision, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

"[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*People v. Perez* (1979) 23 Cal.3d 545, 551.) "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence. [Citation.]" (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

In declining to stay the sentence for false imprisonment, the trial court explained: "As to Count 2, which is the false imprisonment charge, the Court is not persuaded that the sentence for this count should either be stayed under Penal Code 654 or run concurrent. While arguably the conduct in the car happened close in time, the conduct relating to Count 1 and Count 2 are distinctly different and independent. In Count 1, the evidence was that the defendant in more than one way assaulted and injured . . . the victim. As to Count 2, the evidence supporting that charge is the victim was trying to escape from him and got out of the car, and his conduct to keep her from leaving the car prevented her from getting to a place of safety."

As defendant sees it, the crimes constituted one indivisible transaction. He argues the two crimes occurred simultaneously and that "[i]t is apparent that [defendant] had a single objective and that was to physically assault [A.M.] The physical attack, slaps, blows, head butts started when they pulled up next to [L.D. and R.S.] and continued until they drove away. During the attack, the door opened and [A.M.'s] shoe emerged in a very slow motion. As [defendant] pulled her back closer by the arm he continued hitting her, escalating to head butts. There was no break in the attack, while [A.M.] climbed out of the car and tried to escape to a point of freedom. [Defendant's] objective was to beat upon [A.M.] and, without any doubt, his motivation in pulling her back closer was to continue beating on her."

We disagree with defendant's assertion that defendant's objective in pulling A.M. back into the car was necessarily to continue beating her. There is sufficient evidence for the trial court to conclude that the intent of the beating (domestic violence) and the intent of pulling A.M. back into the car and hurrying away (false imprisonment) were different. The trial court properly determined that defendant's intent in committing false imprisonment was separate because he was trying to avoid detection and the consequences for the domestic violence. Thus, the evidence was sufficient to support the trial court's conclusion the criminal intents and objectives of the domestic violence and

6

false imprisonment were separate, and section 654 was inapplicable. (*Harrison, supra*, 48 Cal.3d at p. 335.) The trial court therefore was not required to apply section 654 and stay the sentence for the false imprisonment count.

III

In addition, defendant claims the trial court erred by not staying one of the terms for witness dissuasion under section 654.

Defendant was convicted on two counts of witness dissuasion based on the same acts, which consisted of pointing at R.S. and L.D., who were standing next to each other, and saying things like "mind your own business," "shut up about this," and "don't tell anyone." The trial court did not stay either of the sentences for witness dissuasion. Instead, it imposed a term for one of the witness dissuasion counts (count 3), consecutive to the term for domestic violence, and imposed a concurrent term for the other witness dissuasion count (count 4).

As noted, section 654 prohibits multiple punishments for a single act. However, when a defendant commits a single act of violence against multiple victims, multiple punishments are permitted. This is an exception to section 654's rule prohibiting multiple punishments for a single act. (*People v. Neal* (1960) 55 Cal.2d 11, 20, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334.) In *People v. Hall* (2000) 83 Cal.App.4th 1084, 1091, this court surveyed the application of the multiple-victim exception to various crimes, and concluded: "[I]n each case where the multiple-victim exception was satisfied, the qualifying crime . . . was defined to proscribe an act of violence committed against the person." (*Ibid.*, italics omitted.) The question here, therefore, is whether the act of dissuading a witness, which defendant directed at both R.S. and L.D., was "an act of violence committed against the person." (*Ibid.*)

The witness dissuasion in this case did not require proof of an act of violence. (§ 136.1, subd. (b)(1).) Although the prosecutor charged defendant with two counts of

7

witness dissuasion by force or threat of force under subdivision (c)(1) of section 136.1, the jury acquitted defendant on a violation of that subdivision and instead convicted him of committing the lesser crime of witness dissuasion under section 136.1, subdivision (b)(1), which does not require the prosecution to prove any force or threat of force.[2] Therefore, under *Hall*, this case does not present a multiple-victim exception to section 654 with respect to the two witness dissuasion counts because the definition of the crime did not proscribe an act of violence.

Nevertheless, another district of the Court of Appeal extended the multiple-victim exception to include not just the statutory definition of the crime but also what happened during the commission of the crime. (*People v. Newman* (2015) 238 Cal.App.4th 103, 117 (*Newman*).) According to *Newman*, "[i]t is the act of violence, not just the statutory language, that drives the exception to section 654." (*Ibid*., italics omitted.)

In *Newman*, the defendant robbed the manager of a restaurant. When witnesses moved toward an exit, the defendant pointed his gun at them and told them not to move, thus committing false imprisonment by menace (threat of force) under sections 236 and 237, in addition to the robbery of the restaurant manager. (*Newman, supra*, 238 Cal.App.4th at pp. 106-107, 110.) The trial court chose the robbery for the base term and imposed a consecutive sentence for the false imprisonment by menace. (*Id*. at p. 111.)[3] On appeal, the defendant argued the sentence for false imprisonment should have been stayed under section 654. (*Ibid*.) The Court of Appeal disagreed. Although the false imprisonment was by menace, not actual bodily violence, the trial court properly applied

---

[2] Section 136.1, subdivision (b) proscribes "attempt[ing] to prevent or dissuade another person . . . who is witness to a crime from . . . [¶] [m]aking any report of that victimization to any peace officer . . . ."

[3] The jury also convicted defendant on a second count of false imprisonment (*Newman, supra,* 238 Cal.App.4th at p. 111), but that conviction is not material to our discussion.

the multiple-victim exception because defendant's threat of force was an act of violence even if the defendant did not apply physical force to the victim of false imprisonment under the circumstances of the defendant's crimes. (*Id.* at pp. 120-122.)

*Newman* is distinguishable because, even though the court in *Newman* looked beyond the statutory elements of the crime to the circumstances of the crime, a threat of force was an element of the crime. It was the effective threat of force that prompted the court to determine that the false imprisonment was an act of violence. (*Newman, supra*, 238 Cal.App.4th at pp. 121-122.) Here, on the other hand, the witness dissuasion did not include a threat of force or other potential violence. The jury concluded only that defendant had attempted to dissuade R.S. and L.D. from reporting his crime.

The People argue defendant's attempt to dissuade R.S. and L.D. inflicted "psychic violence" on each of the victims; the conduct scared R.S. and L.D. Therefore, section 654 did not require the trial court to stay the sentence for one of the witness dissuasion counts. For this proposition concerning psychic violence, the People rely on *People v. Solis* (2001) 90 Cal.App.4th 1002 (*Solis*). In that case, the defendant threatened two people at the same time by leaving messages on their common answering machine, and the victims listened to the messages together. Defendant said he was on his way to their apartment and was going to kill the victims. He later set fire to the victims' apartment when they were not there. (*Id.* at p. 1009.) Defendant was convicted on two counts of making a terrorist threat, and the trial court sentenced him to consecutive terms for the two counts. (*Id.* at p. 1020.)

The Court of Appeal in *Solis* affirmed. It determined section 654 was inapplicable because there were multiple victims of an act of violence. The court explained that, to obtain a conviction for making a terrorist threat, the prosecution was required to prove the victim was injured by experiencing "sustained fear." Thus, making a terrorist threat "constitute[d] a crime of psychic violence" that qualified as an act of violence under the multiple-victim exception of section 654. (*Solis, supra*, 90 Cal.App.4th at pp. 1023-

9

1024.) In that case, the act of violence was the statutory element of inflicting sustained fear.

The People argue that, because there was evidence R.S. and L.D. were scared by defendant, they suffered "psychic violence," and section 654 does not require a stay. Under the circumstances of this case, however, any fear R.S. and L.D. experienced was not an element of witness dissuasion. In other words, the commission of the crime was not an act of violence against R.S. and L.D. Unlike the conviction in *Solis*, there was no statutory element such as a threat and sustained fear supporting a finding that defendant committed an act of violence with regard to the attempted dissuading crimes. *Solis* is therefore distinguishable.

The People assert we should nevertheless rely on the circumstances of the crime, without regard to the statutory elements, to conclude there was an act of violence resulting in psychic injury to the victims. (*Newman, supra*, 238 Cal.App.4th at p. 117.) Carried to its logical extreme, the argument would extend the multiple-victim exception to any victim that experienced fear, even if there was no act of violence causing the fear or psychic injury. Such an extension would allow the multiple-victim exception to swallow the statutory rule prohibiting multiple punishments for a single act. We find no authority for such a broad application of the multiple-victim exception. In *Newman* and *Solis*, the psychic injury was brought on by the threat of force, which was an element of the crime, making the crime an act of violence. Here, however, the jury found no threat of force.

Even if R.S. and L.D. felt fear when defendant, by a single act, attempted to dissuade both of them from reporting his crime, section 654 prohibited multiple punishment because the crime was not accomplished by an act of violence. Therefore, the trial court should have stayed sentence on one of the witness dissuasion counts. On remand for resentencing, the trial court may not impose unstayed sentences for both counts of witness dissuasion.

10

## IV

Defendant contends the trial court erred by imposing full midterm sentences for the two counts of witness dissuasion. His argument is that the trial court may have been unaware of its discretion not to impose full midterm sentences and the mere possibility of this requires remand.

Section 1170.15 provides that consecutive sentences imposed for dissuading a witness are to be imposed as full middle-term sentences, not one third of the middle term. However, section 1170.15 "requires the trial court to impose the full middle term of imprisonment only if a consecutive sentence is imposed. The section does not require the trial court to impose a consecutive sentence, but instead indicates that if the trial court chooses consecutive sentencing it must impose a full-term sentence for the witness dissuasion count." (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479.)

The probation report cited section 1170.15 and stated the trial court "shall" impose a full and consecutive middle term for witness dissuasion. The prosecutor also argued that section 1170.15 required the trial court to impose a full and consecutive middle term for witness dissuasion. The probation report and the prosecutor's argument did not acknowledge the holding of *Woodworth* that section 1170.15 applies to make the consecutive term a full middle term *only if* the trial court chooses to impose a consecutive term for witness dissuasion.

At sentencing, the trial court stated: "As to Count 3 and 4, the dissuading a witness charge, the Court believes that the sentence for those should run consecutive to Counts 1 and 2; however, the Court believes the evidence suggests that the same words were used to dissuade both of the witnesses and that concurrent sentencing is appropriate for Count 4 and Count 3. That is, 4 would run concurrent to Count 3 but consecutive to . . . Count 1 and 2."

The record does not clearly indicate that the trial court was unaware of its discretion concerning whether to impose a consecutive sentence. In any event, on

11

remand for resentencing, the trial court and parties will have the opportunity to address the issue if it arises again.

V

In supplemental briefing, defendant contends we must vacate the sentence and remand for resentencing under the newly-enacted changes to section 1170 concerning determinate sentencing (Senate Bill No. 567). Defendant argues that, because his judgment is not final, he is entitled to retroactive application of the amendments to section 1170. He further argues we must vacate his sentence and remand this matter so the trial court can exercise its sentencing discretion in light of the new legislation.

While this appeal was pending, the Governor signed Senate Bill No. 567, which changed the requirements for using aggravating circumstances and altered sentencing discretion under section 1170, effective January 1, 2022.[4] (Stats. 2021, ch. 731.) Among other things, Senate Bill No. 567 amended section 1170 to prohibit upper term sentencing unless factors in aggravation are stipulated to by the defendant, proven to a factfinder beyond a reasonable doubt, or established by a certified record of conviction. (§ 1170, subds. (b)(2) and (b)(3).) Senate Bill No. 567 also creates a presumption in favor of the low prison term if defendant's youth or psychological, physical, or childhood trauma contributed to the commission of the offense. (§§ 1170, subd. (b)(6)(A) & (B); 1016.7, subd. (b).)

---

[4] Three bills amending section 1170 became effective on the same date. (Stats. 2021, ch. 695, § 5 (Assem. Bill No. 124), effective Jan. 1, 2022; Stats. 2021, ch. 719, § 2 (Assem. Bill No. 1540), effective Jan. 1, 2022; Stats. 2021, ch. 731, § 1.3 (Sen. Bill No. 567), effective Jan. 1, 2022.) Senate Bill No. 567 -- which takes precedence because it was enacted last (Gov. Code, § 9605) -- states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022, and Senate Bill No. 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill No. 567, Assembly Bill No. 124, and Assembly Bill No. 1540, shall become operative. (Stats. 2021, ch. 731, § 3.)

The People agree the change in the law is ameliorative and applies retroactively to defendant's case, and we do too. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039.)

Defendant argues we must vacate the sentence and remand for resentencing because the trial court relied on aggravating factors that were not stipulated to or proven beyond a reasonable doubt to a factfinder. (§ 1170, subd. (b)(2).) The People do not deny that due to the change in the law, the trial court's sentencing has become erroneous under amended section 1170, subdivision (b), but they claim the error was harmless beyond a reasonable doubt. They do not dispute that the facts underlying the circumstances in aggravation recited by the trial court were not stipulated to by defendant and were not found true beyond a reasonable doubt by the jury. (§ 1170, subd. (b)(2).) Instead, they claim a jury would have inevitably found one of the aggravating factors true.

Although at least one court has applied a harmless error analysis under Senate Bill No. 567 (*People v. Flores* (2022) 75 Cal.App.5th 495, 500-501), we need not decide whether such an analysis is appropriate because the People's specific argument is inapplicable to this case.

In sentencing defendant on the domestic violence conviction to the upper term of four years, doubled to eight years because of a strike prior, the trial court cited four aggravating factors: defendant engaged in violent conduct indicating a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1));[5] defendant has numerous prior convictions and juvenile adjudications (rule 4.421(b)(2)); defendant served a prior prison term (rule 4.421(b)(3)); and defendant did not perform satisfactorily on probation or other

---

[5] Undesignated rule citations are to the California Rules of Court.

conditional release (rule 4.421(b)(5)). Defendant also had one mitigating factor -- that his most recent prior conviction was in 2008.

The People argue that, even if the trial court relied on aggravating circumstances that were not stipulated to or proven beyond a reasonable doubt to a factfinder, "at the very least, a jury would have found one of the aggravating factors relied on by the trial court true beyond a reasonable doubt" -- that aggravating factor being that defendant engaged in violent conduct indicating a serious danger to society.

In making this argument, the People refer to Sixth Amendment jurisprudence and, specifically, *People v. Sandoval* (2007) 41 Cal.4th 825, 839 (*Sandoval*).) But defendant asserts a violation of the amended version of section 1170, subdivision (b), not a violation of the Sixth Amendment.

The question in *Sandoval* was whether the defendant was *eligible* for upper-term sentencing under the Sixth Amendment. The court determined a defendant is eligible for upper-term sentencing under the Sixth Amendment if there is one aggravating circumstance, because the existence of an aggravating circumstance permits the trial court to exercise its discretion to impose the upper term. (*Sandoval, supra*, 41 Cal.4th at 839.) Applying a harmless error analysis, the court continued: "By the same reasoning, if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Ibid*.)

The reasoning in *Sandoval* is not dispositive here because the question is not whether defendant is eligible for upper-term sentencing under the Sixth Amendment. Instead, the question is whether the sentencing passes muster under section 1170 as amended by Senate Bill No. 567. While a defendant may be *eligible* for upper-term sentencing if, beyond a reasonable doubt, a jury would have unquestionably found true a single aggravating circumstance, section 1170, subdivision (b), as amended, changed the

14

way the trial court must exercise its discretion in determining whether aggravating circumstances outweigh mitigating circumstances. If aggravating circumstances, properly found, do not justify imposition of the upper term, the trial court must impose, at most, the middle term. (§ 1170, subd. (b)(2).) Therefore, saying that a jury would have found a single aggravating circumstance beyond a reasonable doubt does not demonstrate that a violation of section 1170, subdivision (b) was harmless. At most, it demonstrates a violation of the Sixth Amendment was harmless, which is not the issue raised by defendant.

The People bear the burden of demonstrating harmless error on appeal. (*People v. Jackson* (2014) 58 Cal.4th 724, 748.) Demonstrating that a jury would have found true at least one aggravating circumstance if it had been properly proven does not answer whether the trial court's improper reliance on unstipulated and unproven aggravating circumstances was harmless. Because the People make no harmless error argument applicable to the violation of section 1170, subdivision (b), we will vacate the sentence and remand for resentencing under the amended version of section 1170, subdivision (b).

VI

Defendant further contends, and the People agree, that the abstract of judgment incorrectly describes two of the convictions.

Defendant was acquitted on two counts of violating section 136.1, subdivision (c)(1), but convicted on two counts of violating section 136.1, subdivision (b)(1). The abstract of judgment, however, lists those convictions as violations of section 136.1, subdivision (c)(1). On remand, the abstract of judgment must reflect the proper subdivision when the new sentence is imposed. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

DISPOSITION

15

The sentence is vacated and the matter remanded for resentencing consistent with section 1170, subdivision (b) and with this decision. In all other respects, the judgment is affirmed. The abstract of judgment must reflect, among other things, that defendant was convicted on two counts of violating section 136.1, subdivision (b)(1).

                                                                 /S/
                                                          MAURO, J.

We concur:

     /S/
HULL, Acting P. J.

     /S/
RENNER, J.